IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JANET M. BENNETT, PH.D.**,<br><br>    Plaintiff,<br><br>v.<br><br>**UNITED STATES LIABILITY INSURANCE GROUP**,<br><br>    Defendant. | Case No. 3:13-cv-01565-SI<br><br>**OPINION AND ORDER** |

Lawrence B. Burke and Timothy M. Cunningham, Davis Wright Tremaine, LLP, 1300 S.W. Fifth Avenue, Suite 2400, Portland, OR 97201. Of Attorneys for Plaintiff.

Patrick J. Kurkoski, Mitchell, Lang & Smith, 2000 One Main Place, 101 S.W. Main Street, Portland, Oregon 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Janet M. Bennett ("Ms. Bennett" or "Plaintiff") brings this action against United States Liability Insurance Group ("USLI" or "Defendant"), alleging that USLI breached its insurance contract with Ms. Bennett by failing to defend her against a state court lawsuit. USLI moves for judgment on the pleadings, arguing that Ms. Bennett's complaint and attached exhibits fail to establish any factual or legal support for her claim. Ms. Bennett opposes USLI's motion and

PAGE 1 – OPINION AND ORDER

moves for partial summary judgment, arguing that there is no genuine dispute of material fact and Ms. Bennett is entitled to judgment as a matter of law.

## STANDARDS

### A. Motion for Judgment on the Pleadings

A Rule 12(c) "motion for judgment on the pleadings faces the same test as a motion under Rule 12(b)(6)." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Dismissal for failure to state a claim under Rule 12(b)(6) "is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988)). In addition, "to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (holding that the *Iqbal* standard applies to review of Rule 12(c) motions).

### B. Motion for Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling

on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

Ms. Bennett works as a training specialist and seminar conductor and is or was also a director and officer at the non-profit Intercultural Communications Institute, Inc. ("ICI"). On August 24, 2010, Milton Bennett sued Ms. Bennett in state court, seeking declaratory relief that would confirm the removal of Ms. Bennett from the ICI Board of Directors and that ICI owed no deferred compensation to Ms. Bennett. From March 19, 2009 through March 19, 2013, USLI issued a business liability insurance policy, Policy No. SP101732A, to Ms. Bennett.[1] Compl. ¶ 4, ECF 1.

In the state court lawsuit, Milton Bennett accused Ms. Bennett, his former wife, of various acts of misconduct relating to her involvement with ICI, including:

> (a) Invoicing clients of Ms. Bennett's professional services through a non-profit entity, effectively assigning income from professional services in the entity, thereby adversely affecting the tax status of the entity; and
>
> (b) Mischaracterizing funds derived from Ms. Bennett's professional services as deferred compensation due to Ms. Bennett from the non-profit, contrary to the requirements of the Internal Revenue Code and without approval from the board.

Compl. ¶ 20.

---

[1] During the relevant time frame, USLI also issued separate policies of Nonprofit Professional Liability Insurance to ICI.

PAGE 3 – OPINION AND ORDER

Ms. Bennett's USLI policy covers only claims arising "solely in the performance of Professional Services as a Training Specialist/Seminar Conductor for others for a fee." Compl. Ex. A, ¶ 1. The policy further provides: "Coverage shall apply to any **Claim** first made against the **Insured** arising out of a **Wrongful Act** committed prior to the expiration date of this Policy." *Id.* ¶ 3. There are at least three relevant definitions included in the policy: First, a "Claim" is defined as "(1) a demand for money as compensation for a **Wrongful Act**, or (2) any judicial or administrative proceeding instituted against any **Insured** seeking to hold such **Insured** responsible for a **Wrongful Act** . . . ." *Id.* Second, a "Wrongful Act" is defined as "any actual alleged error or omission or negligent act of an **Insured** . . . in the rendering of **Professional Services**." *Id.* ¶ 4. And third, "Professional Services" are defined as "services rendered to others for a fee solely in the conduct of the Insured's profession . . . ." *Id.*

The policy also includes several exclusions. In pertinent part, the policy states:

> IV. EXCLUSIONS: This policy does not apply to, and the **Company** will not defend or pay **Loss** for, any **Claim** arising out of, directly or indirectly resulting from, based upon, or in any way involving any actual or alleged:
>
> . . .
>
> D. non-pecuniary relief;
>
> . . .
>
> L. performance of or failure to perform Professional Services for: . . . (5) any entity of which any person included within the definition of **Insured** is a director, officer, partner or more than a three percent (3%) shareholder;
>
> . . .
>
> P. cost guarantee or estimates of probable costs or cost estimates being exceeded; [or]
>
> Q. fee dispute or suit for fees initiated by the **Insured** against any past or current client of the **Insured**[.]

PAGE 4 – OPINION AND ORDER

Compl. Ex. A at 4.

The USLI policy also requires that Ms. Bennett notify USLI of any suit in order to trigger the duty to defend. Ms. Bennett alleges that she notified USLI of the lawsuit by letter on September 8, 2010. Compl. ¶ 15. The letter's "Re line" stated: "Insureds: Intercultural Communications Institute, Janet Bennett and Margaret Pusch" and went on to state that the letter was intended "to provide United States Liability Insurance Company ("USLI[]") notice of a claim under one or more of the above Nonprofit Professional Liability Insurance Policies, or other USLI[] policies." Pl.'s Reply, ECF 16 at 6. USLI argues that this letter is insufficient notice under Ms. Bennett's professional services insurance policy and that USLI did not receive adequate notice of Ms. Bennett's claim under that policy until April 11, 2012, when Ms. Bennett herself sent a letter to USLI. Rubin Decl. ¶ 3, ECF 16. On April 16, 2012, USLI sent Ms. Bennett a letter refusing to provide a defense. Compl. ¶ 17.

## DISCUSSION

### A. Legal Standards

#### 1. Duty to Defend

Under Oregon law, courts look to "two documents to determine whether an insurer has a duty to defend against an action against its insured: the insurance policy and the complaint in the action against the insured." *Bresee Homes, Inc. v. Farmers Ins. Exch.*, 353 Or. 112, 116 (2012). When assessing the duty to defend, courts first determine whether the conduct alleged in the complaint is covered or excluded by the insurance policy. *Marleau v. Truck Ins. Exch.*, 155 Or. App. 147, 152-53 (1998). To trigger the duty to defend, a complaint need not be in perfect form but must contain factual allegations, without amendment, sufficient to state a claim for an offense covered by the insurance policy. *See Bresee Homes*, 353 Or. at 116. The insurer should be able to determine from the face of the complaint whether to defend the action. *Id.* Any

PAGE 5 – OPINION AND ORDER

ambiguity in the complaint as to whether or not the allegations are covered by the insurance policy is resolved in favor of the insured. *Id.* The Court construes the policy as a whole. *Id.*

### 2. Oregon Insurance Contract Interpretation

In Oregon, interpretation of an insurance contract is a question of law. *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Or.*, 313 Or. 464, 469 (1992). "The primary and governing rule of construction is to ascertain the intention of the parties." *Id.* In order to determine the intention of the parties, the court looks to the terms and conditions of the insurance policy itself. Or. Rev. Stat. § 742.016. The court's role is "not to insert what has been omitted, or to omit what has been inserted," but rather "simply to ascertain and declare what is, in terms or in substance, contained therein." Or. Rev. Stat. § 42.230.

If the insurance contract defines the term or phrase at issue, the court applies that definition. *Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 649 (2006). If, on the other hand, the policy does not define the term or phrase, the court turns to "aids of interpretation to discern the parties' intended meaning." *Id.* The Oregon Supreme Court provides a three-part interpretive framework for determining the parties' intended meaning: first, the court considers "whether the phrase in question has a plain meaning, *i.e.*, whether it 'is susceptible to only one plausible interpretation.'" *Id.* (citation omitted). If there is only one plausible interpretation, the court applies that interpretation with no further analysis. But if there is more than one possible meaning, the court proceeds to the second interpretive step, in which the court examines "the phrase in light of the particular context in which that phrase is used in the policy and the broader context of the policy as a whole." *Id.* at 334 (citation and quotation marks omitted). Finally, if any ambiguity remains, the court at step three resolves "any reasonable doubt as to the intended meaning of such a term" against the insurance company. *Id.* at 334.

PAGE 6 – OPINION AND ORDER

**B.  USLI's Motion for Judgment on the Pleadings and Ms. Bennett's Motion for Summary Judgment**

There are two primary issues at the heart of both USLI's and Ms. Bennet's motions: (1) whether the manner in which Ms. Bennett used another entity for collection of professional fees, as alleged in the state court complaint, amounts to a "Wrongful Act" in the rendering of "Professional Services" covered by the policy; and (2) whether the underlying action can be construed as seeking anything other than excluded non-pecuniary relief. Ms. Bennett's motion for summary judgment raises one additional issue: whether Ms. Bennett provided proper and timely notice of her claim to USLI. Based on the discussion below, the Court does not reach the exclusion issue or the notice issue.

Regarding the first issued raised by USLI's motion, USLI argues that Milton Bennett's state court action does not allege any conduct within the policy's definition of "Wrongful Act." As noted above, under the policy, "'**Wrongful Act**' means any actual alleged error or omission or negligent act of any **Insured** . . . in the rendering of **Professional Services**," which are defined as "services rendered to others for a fee solely in the conduct of the **Insured's** profession . . . ." Compl. Ex. A, ¶ 4. The policy further limits coverage to claims arising "solely in the performance of Professional Services as a Training Specialist/Seminar Conductor for others for a fee." *Id.* ¶ 1. Milton Bennett alleged that Ms. Bennett's wrongful act was inappropriately billing and collecting fees for her professional services through ICI. USLI argues that this alleged conduct is not itself professional services, but rather only conduct seeking compensation for those services. Therefore, USLI argues, the policy excludes coverage for Milton Bennett's lawsuit because he did not allege wrongful acts in the rendering of professional services.

Ms. Bennett argues that the conduct alleged in Milton Bennett's suit is covered by the policy because the definition of Ms. Bennett's profession, "Professional Services as a Training

PAGE 7 – OPINION AND ORDER

Specialist/Seminar Conductor for others for a fee," includes the phrase "for a fee." Because the definition references the term "for a fee," Ms. Bennett contends that the parties intended to have billing and fee disputes covered by the policy. USLI responds that the inclusion of the term "for a fee" was only intended to differentiate paid professional activity, which would be covered by the policy, from uncharged or pro bono professional activity, which would not be covered by the policy.

Because the insurance contract defines the term "Professional Services," the Court applies that definition. *See Holloway*, 341 Or. at 649. The definition, "services rendered to others for a fee solely in the conduct of the **Insured's** profession," and the more specific definition of Ms. Bennett's professional services as "Training Specialist/Seminar Conductor for others for a fee," do not encompass the inappropriate billing actions alleged in Milton Bennett's lawsuit. Although the term "for a fee" is included in the policy's definitions, the phrase merely modifies the type of "Training Specialist/Seminar Conductor" services that are covered by the policy; it does not add other types of services to the definition of "Professional Services."

Because the insurance policy provides a definition for "Professional Services," the Court applies that definition and need look no further. The Court notes, however, that persuasive sources from both the courts and insurance treatises support the Court's conclusion that "professional services" do not include billing actions. *See Bank of America, N.A. v. Opie*, 663 F.2d 977, 981 (9th Cir. 1981) ("In determining whether a particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself."); *Horizon W., Inc. v. St. Paul Fire & Marine Ins. Co.*, 45 Fed. App. 752 (9th Cir. 2002) (unpublished) ("Professional Services" under the plain meaning of the policy do not extend to Horizon West's . . . billing activities."); *Med. Records. Assocs., Inc. v. A,. Empire*

*Surplus Lines Ins. Co.*, 142 F.3d 512, 514-16 (1st Cir. 1998) ("The bill is an effect of the service provided not part of the service itself."); APPLEMAN ON INSURANCE LAW & PRACTICE ARCHIVE § 146.3 ("Billing and other administrative activities are generally not considered to be professional services because they do not involve expertise related to performance of a particular profession.").[2]

Ms. Bennett also argues that if the policy was intended to exclude coverage of billing disputes, there would be no reason for the policy explicitly to exclude coverage for claims arising out of "cost guarantee or estimates of probable costs or cost estimates being exceeded" or "fee dispute or suit for fees initiated by the Insured against any past or current clients of the Insured." Compl. Ex. A, Exclusions P and Q. Ms. Bennett argues that the policy must, therefore, cover the allegations brought by Milton Bennett, otherwise, the exclusions would be surplusage.

USLI counters that the exclusions are "instructional in nature—they do not serve to carve out otherwise covered claims but . . . emphasize what is, in fact, not covered." Def.'s Reply, ECF 13 at 4. USLI also argues that Exclusion Q, which excludes "fee dispute or suit for fees initiated by the **Insured** against any past or current client of the **Insured**," was intended to cover the circumstances where the insured sues a client for a billing dispute and the client counter sues for malpractice. Exclusion Q is intended to exclude this type of "don't poke the hornet's nest"

---

[2] After oral argument on this motion, Ms. Bennett and USLI submitted supplemental briefing to the Court (ECF 24 and ECF 25). Ms. Bennett argues that the Court should not consider any sources outside the policy itself because the policy provides a definition for professional services. As discussed above, the Court follows Oregon insurance policy interpretation law and applies the definition provided in the policy, but also observes that the authorities from the circuit courts and secondary sources universally supports the Court's interpretation of the "Professional Services" definition. In a letter emailed to the Court and opposing counsel on April 21, 2014, Ms. Bennett also requested that the Court reopen the record to allow Ms. Bennett to submit an affidavit regarding the professional standards for the Society of Intercultural Education, Training, and Research, of which Ms. Bennett is a member. The Court finds this evidence is not relevant to the motions pending before the Court and denies Ms. Bennett's request to reopen the record.

PAGE 9 – OPINION AND ORDER

scenario. In other words, when an insured sues a client for fees and the client counterclaims for negligently performed professional services, the suit is not covered by the policy, argues USLI, because the insured initiated the litigation.[3]

The Court agrees with USLI that these exclusions do not alter the fact that Milton Bennett's allegations do not involve the rendering of professional services based on the definition provided in the policy. Therefore, the actions alleged by Milton Bennett are not covered by the policy and do not trigger the duty to defend. *See Ausman v. Eagle Fire Ins. Co.*, 250 Or. 523, 530 (1968) ("An insurance company is entitled to have its contract enforced as it is written.").

Because the Court finds that the definition of "Professional Services" does not include the acts alleged in Milton Bennett's state court action, the Court does not reach the issues of whether the non-pecuniary relief exclusion applies or whether Ms. Bennett provided USLI with proper and timely notice. Therefore, the Court grants USLI's motion for judgment on the pleadings based on the fact that the actions alleged by Milton Bennett are not covered by USLI's policy and do not trigger the duty to defend.

## CONCLUSION

The Court GRANTS Defendant USLI's motion for judgment on the pleadings (ECF 6) and DENIES Plaintiff's motion for partial summary judgment (ECF 9). This case is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED**.

DATED this 25th day of April, 2014.

/s/ Michael H. Simon
Michael H. Simon

---

[3] The Court need not reach the issue of whether such an exclusion is valid.

United States District Judge